```
                    UNITED STATES DISTRICT COURT

                  FOR THE EASTERN DISTRICT OF CALIFORNIA


HAT WORLD, INC., d/b/a
LIDS TEAM SPORTS,
                                        NO. CIV. S-12-01591 LKK/EFB
          Plaintiff,

     v.

KEVIN KELLY,

          Defendant.
                                    /
```

Plaintiff Hat World, Inc., alleges seven causes of action against defendant, who is a former Hat World employee. The complaint alleges generally that the defendant misappropriated property and confidential information when he left his employment with Hat World. The information claimed included customer lists, purchase orders, invoices, and spreadsheets. Pending before the court is a motion by defendants to dismiss all but one of plaintiff's claims for relief, and a motion by plaintiff for a preliminary injunction. For the reasons discussed herein, the Motion to Dismiss is GRANTED in part and DENIED in part. The Motion for a Preliminary Injunction is DENIED.

1

## I. Background

The following factual allegations are taken from the complaint. For the purpose of the pending motions only, they are taken as true.

Plaintiff Hat World, through its subsidiary Lids, sells customized sports uniforms, apparel, footwear, and equipment to institutional sports teams. The company also offers custom screen printing and embroidery. The company owns a license with Nike that allows it to sell products with the Nike "swoosh" logo. Lids operates in all fifty of the United States. Defendant Kelly began working for Hat World in April 2010. Kelly signed a Confidentiality Agreement, which provides in part:

> Employee [Kelly] acknowledges that during his/her employment, s/he may have access to and acquire knowledge of trade secrets and/or confidential information of the Employer [Hat World], including, but not necessarily limited to, business plans, financial information, marketing plans, client or customer information, client or customer lists, vendor information, and contracts, that have economic value and/or give the Employer a competitive advantage in the marketplace. Employee agrees not to use, reproduce, disclose, or make available the Employer's trade secrets or confidential information for his/her own benefit or the benefit of any person or entity other than the Employer without express permission or proper authorization from the Employer.

Ex. A to Compl. ECF 1-2.

Defendant worked as a sales representative for Hat World until February 2012. Kelly worked on 110 accounts throughout Northern California. As part of his job, Kelly cultivated customer goodwill, and maintained information about the company's purchasers. In addition, Kelly had access to confidential and proprietary business

2

information, including customer lists, customer preferences, price lists, costs, revenue data, and pricing and discount structure.

During his last week of employment with Hat World, defendant transferred files from his work computer to his personal email account. Also during the tail-end of his employment with Hat World, Kelly failed to final or process purchases from customers. Plaintiffs allege on information and belief that Kelly had already been hired by Eastbay while he was working for Hat World, and that he was attempting to set up orders for Eastbay with Hat World customers.

Hat World became aware of defendant's employment with Eastbay in March 2012. Hat World alleges that defendant has targeted Hat World customers identified in the confidential files that Kelly emailed to himself while working for Hat World. Upon his resignation, Kelly failed to return a laptop computer, personal digital assistant, product samples, and product catalogs belonging to Hat World. Kelly has now returned the laptop, but not the remaining items.

The complaint alleges that while working for Eastbay, Kelly has used proprietary Hat World order forms to send price quotes to customers, that Kelly has fulfilled orders on behalf of Eastbay when those orders were placed with Kelly while he was employed by Hatworld.

The complaint also alleges that Kelly has been soliciting other Hat World sales representatives to work for Eastbay, and is using his knowledge about Hat World's cost structure in order to

3

underbid for Hat World accounts and place Hat World at a competitive disadvantage.

After recovering the laptop computer from Kelly, Hat World learned that Kelly had continued to access confidential information and his Hat World email account after his resignation from Hat World.

Based on the foregoing allegations, plaintiff's complaint asserts seven causes of action: (1) Misappropriation of Trade Secrets in violation of the California Uniform Trade Secrets Act ("CUTSA"); (2) Unfair Competition in Violation of California Business and Professions Code Sections 17200 et. seq.; (3) Conversion; (4) Intentional Interference with Contractual Relations; (5) Intentional Interference with Prospective Economic Relations; (6) Breach of Confidentiality Agreement; and (7) Violation of the Computer Fraud and Abuse Act.

Now pending before the court are plaintiff's motion for a preliminary injunction, and defendant's motion to dismiss.

## II. Standards

**A. Standard for a Motion to Dismiss**

A dismissal motion under Fed. R. Civ. P. 12(b)(6) challenges a complaint's compliance with the federal pleading requirements. Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give the defendant "'fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), quoting Conley v.

4

Gibson, 355 U.S. 41, 47 (1957).

To meet this requirement, the complaint must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S. 662 (2009). Moreover, this court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007).[1]

"While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. Iqbal, 556 U.S. at ___, 129 S. Ct. at 1949-50. Iqbal and Twombly therefore prescribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1949-50.

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for

---

[1] Citing Twombly, 556 U.S. at 555-56, Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("[w]hat Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations"), and Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test" under Rule 12(b)(6)).

the misconduct alleged." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557).[2] A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

**B. Standard for a Motion for a Preliminary Injunction**

Fed. R. Civ. P. 65 provides authority to issue either preliminary injunctions or temporary restraining orders. A preliminary injunction is an "extraordinary remedy." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008) (internal citation omitted). When a court considers whether to grant a motion for a preliminary injunction, it balances "the

---

[2] Twombly imposed an apparently new "plausibility" gloss on the previously well-known Rule 8(a) standard, and retired the long-established "no set of facts" standard of Conley v. Gibson, 355 U.S. 41 (1957), although it did not overrule that case outright. See Moss v. U.S. Secret Service, 572 F.3d 962, 968 (9th Cir. 2009) (the Twombly Court "cautioned that it was not outright overruling Conley ...," although it was retiring the "no set of facts" language from Conley). The Ninth Circuit has acknowledged the difficulty of applying the resulting standard, given the "perplexing" mix of standards the Supreme Court has applied in recent cases. See Starr v. Baca, 652 F.3d 1202, 1215 (9th Cir. 2011) (comparing the Court's application of the "original, more lenient version of Rule 8(a)" in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) and Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam), with the seemingly "higher pleading standard" in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), Twombly and Iqbal), rehearing en banc denied, ___ F.3d ___, 2011 WL 4582500 (October 5, 2011). See also Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (applying the "no set of facts" standard to a Section 1983 case).

6

competing claims of injury, . . . the effect on each party of the granting or withholding of the requested relief, . . . the public consequences in employing the extraordinary remedy of injunction," and plaintiff's likelihood of success. Id. at 20, 24 (quoting Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987); Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982). In order to succeed on a motion for a preliminary injunction, the plaintiff must establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20.

After Winter, the Ninth Circuit modified its "sliding scale" approach which balanced the elements of the preliminary injunction test. "The 'serious questions' approach survives Winter when applied as part of the four-element Winter test. In other words, 'serious questions going to the merits' [rather than a likeliness of success on the merits] and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Alliance For The Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011).

### III. Analysis

**A. Motion to Dismiss**

Defendant argues that portions of the first, and all of the second through fifth claims for relief are preempted by the California Uniform Trade Secrets Act, California Civil Code §3426

7

("CUTSA"). Defendant also argues that the seventh claim should be dismissed for failure to state a claim.

**i. CUTSA Preemption**

CUTSA generally provides remedies, including injunctive relief and damages, for improper acquisition or use of trade secrets that have been the subject of reasonable efforts to maintain secrecy. Cal Civ Code § 3426. The statute has a "comprehensive structure and breadth," and "occupies the field" with respect to common law trade secret misappropriation claims. K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc., 171 Cal. App. 4th 939, 954 (Cal. App. 6th Dist. 2009). Thus, CUTSA provides the exclusive civil remedy for trade secret misappropriation under California law. Silvaco Data Sys. v. Intel Corp., 184 Cal. App. 4th 210, 236 (6th Dist. 2010). See also Cacique, Inc. v. Robert Reiser & Co., 169 F.3d 619 (9th Cir. 1999) ("California courts have held that the common law of trade secrets has been displaced where it conflicts with California's version of the UTSA.").

This preemption applies to all common law claims that are "based on the same nucleus of facts as the misappropriation of trade secrets claim." K.C. Multimedia, Inc. 171 Cal App. 4th at 958. "In other words, preemption generally applies where there is no material distinction between the wrongdoing underlying the CUTSA claim and the non-CUTSA claim." Ikon Office Solutions, Inc. v. Rezente, 2011 U.S. Dist. LEXIS 40053 (E.D. Cal. 2011).

The text of the statute identifies three categories of claims that it does not preempt: contractual remedies, whether or not

based on misappropriation of trade secrets, other civil remedies not based on trade secret misappropriation, and criminal remedies whether or not based on misappropriation of a trade secret. Cal Civ Code § 3426.7.

With respect to plaintiff's first claim the parties agree that "reference to the common law claim for misappropriation of trade secrets would be preempted by CUTSA." Pl.'s Opp'n 4, ECF No. 48. Accordingly, the first claim for relief is DISMISSED with leave to amend.

Defendant argues that claims two, three, four, and five "are predicated entirely on the factual allegation that Mr. Kelly misappropriated Hat World's trade secrets." Def.'s Mot 4, ECF No. 35. Plaintiff appears to concede that the claims are preempted insofar as they are based on misappropriation of trade secrets, but argues that there is a basis for each claim even setting aside references to trade secrets. For example, the complaint's second claim alleges that Kelly violated California's Unfair Competition Law ("UCL") by "misappropriation of Hat World's trade secrets and other confidential and proprietary information, unlawful solicitation of Hat World customers and employees, and unlawful conversion of purchase orders for Hat World products," Compl. ¶61. Plaintiff's opposition argues that the claim is not preempted because the alleged conduct "clearly constitutes an unlawful or fraudulent business act or practice sufficient to state a claim under the UCL and is not premised on the misappropriation of Plaintiff's confidential information," Pl.'s Opp'n 5.

9

Similarly, the complaint's fourth claim alleges that defendant interfered with Hat World's contractual relationships by "unlawful use of Hat World's confidential information and misappropriation of its trade secrets to solicit Hat World customers and sales representatives." Compl. 14. In the opposition, plaintiff argues that the claim should not be dismissed because it alleges tortious interference by additional methods beyond misappropriation of trade secrets.

Because plaintiff appears to concede that its claims are preempted insofar as they are based on misappropriation of trade secrets, but argues that the claims remain viable because of conduct falling outside of CUTSA's scope, the court DISMISSES the complaint, and GRANTS plaintiff leave to amend the complaint to disentangle claims that are preempted by CUTSA from those that are premised on a separate nucleus of facts.

**ii. Computer Fraud and Abuse**

Plaintiff's seventh claim alleges that defendant violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 when he "knowingly and with the intent to defraud accessed without authorization, and/or exceeded his authorization in accessing, Plaintiff's computers, computer systems, and databases in an effort to damage and/or misappropriate Hat World's confidential and protected information." This claim arises from the allegation that during his employment, defendant accessed Hat World's computers and servers for purposes other than company business, and that he accessed the computers and servers on February 15 and February 16,

10

1  after all authorization to access the computers "would have
2  terminated" following Kelly's resignation. Compl. ¶ 47. Defendant
3  argues that plaintiff has failed to state a claim because the
4  complaint does not allege that defendant accessed any information
5  that he was not authorized to access.

6  In the Ninth Circuit, "the plain language of the CFAA targets
7  the unauthorized procurement or alteration of information, not its
8  misuse or misappropriation. . . . the phrase 'exceeds authorized
9  access' in the CFAA does not extend to violations of use
10 restrictions." United States v. Nosal, 676 F.3d 854, 860 (9th Cir.
11 2012). In short, the CFAA is an "anti-hacking" statute and not a
12 misappropriation statute. Id.

13 Here, plaintiff's CFAA claim has two independent components:
14 one is that defendant accessed computers and servers for purposes
15 other than company business. Compl. ¶ 82. The second is that he
16 accessed those computers after he resigned. As to the first
17 component, the court agrees with defendant that the alleged conduct
18 does not violate the CFAA because defendant was authorized to
19 access the information. As to the second components, the court
20 concludes that plaintiff has stated a claim under the CFAA by
21 alleging facts from which the court can plausibly conclude that
22 defendant exceeded his authorized access by continuing to access
23 information stored on company computers and servers after his
24 resignation.

25 Accordingly, the motion to dismiss is GRANTED in part and
26 DENIED in part. Plaintiff's first claim for relief is DISMISSED

11

1  insofar as it refers to violations of the common law of
2  misappropriation of trade secrets. Plaintiff's second, third,
3  fourth, and fifth claims are DISMISSED with leave to amend.
4  Plaintiff's seventh claim for relief is DISMISSED with respect to
5  defendant's accessing of Hat World computers during his employment,
6  but it is not dismissed with respect to access to the computers
7  after his resignation.

**B. Motion for a Preliminary Injunction**

The court will consider plaintiff's motion for a preliminary injunction insofar as it rests on the CUTSA and breach of confidentiality agreement[3] claims, which this order does not dismiss. Plaintiff's motion seeks a preliminary injunction to

> prevent Defendant Kelly from directly or indirectly, individually or in concert with others: (a) using or disclosing any of Hat World's confidential information and trade secrets; (b) using Hat World's confidential information and trade secrets to solicit Hat World customers; (c) soliciting any Hat World customers identified in materials previously misappropriated by Defendant (as described in more detail in documents filed herewith under seal), until the earlier of the trial date or the one-year anniversary of the Court's order; (d) using Hat World's confidential information and trade secrets to solicit Hat World employees; (e) using Eastbay products to fill, or otherwise filling on behalf of Eastbay, any customer purchase orders previously placed with Hat World; and (f) otherwise breaching the Confidentiality Agreement identified in Plaintiff's Complaint.

Mot. for Preliminary Injunction 20, ECF No. 7.

////

---

[3] As noted, contract claims are not preempted by CUTSA, and defendant did not seek to dismiss claim six (breach of confidentiality agreement).

12

**i. Likelihood of Success on the Merits**

**a. CUTSA Claim**

Plaintiff alleges that defendant misappropriated customer lists containing customer preferences, pruchasing history, price quotes, and product specifications, and that he has used this information to benefit himself and Eastbay by targeting customers based on their past purchasing history.

Under CUTSA, a "trade secret" is "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal Civ Code § 3426.1(d).

Customer lists may be considered trade secrets "where the employer has expended time and effort identifying customers with particular needs or characteristics." Morlife, Inc. v. Perry, 56 Cal. App. 4th 1514, 1521 (Cal. App. 1st Dist. 1997). The customer list must have economic value in order to qualify as a trade secret. This means that the secrecy of the list provides a business with a substantial advantage. Id. The ability of a former employee to "solicit both more selectively and more effectively" is a substantial advantage. Id.

Plaintiff here has submitted a declaration by a Hat World executive that explains that the customer lists contain detailed information that is "integral to the successful operation and

13

growth of Hat World's business." Moldander Decl. ¶ 8, ECF No. 8. Further, the declaration states that the customer information is not readily available to the public, and describes the efforts put in place by Hat World to preserve the secrecy of the customer lists. The employee handbook prohibits disclosure of this confidential information, employees are required to execute confidentiality agreements, and employees are regularly instructed that the information is confidential. Further, access to the information on company computers is restricted to employees with passwords. Molander Decl.

  Defendant counters that much of the information on the customer lists, such as the identity of the customers and the individuals in charge of purchasing, is readily available to the public, as most of the customers are local high school athletic teams. Defendant also argues that defendant has produced no evidence that defendant forwarded to himself the portions of the customer lists that could be deemed "trade secrets." Defendant states in a declaration that he did not forward to himself "any compilation of information created by Lids regarding Lids customers. Lids never provided me with any detailed report reflecting each customer's history of purchases or summary information about any particular habits, general needs, or preferences." Kelly Decl. ¶ 22. Plaintiff has not submitted to the court an example of a customer list that it claims constitutes "trade secrets."

  Although Hat World's preliminary injunction motion focuses

1 entirely on customer lists, defendant has provided copies of emails
2 and other documents that appear to indicate that activity directed
3 from his private email account in the last weeks of his employment
4 and during the days after his resignation was not for the benefit
5 of himself or Eastbay. For example, in an email chain spanning from
6 February 20, 2012 to February 24, defendant communicated with
7 Lids/Hat World employee Thomas Moore from his personal email
8 account. In the email exchange, defendant appears to be assisting
9 Mr. Moore in completing an order placed with Lids by one of
10 defendant's former clients. Ex. 4 to Kelly Decl. Likewise, on
11 February 16, 2012, after defendant's resignation, he sent an email
12 to Hat World/Lids employee Taylor Gorman directing Mr. Gorman to
13 "make sure that this late Hypercool Jersey is shipping overnight to
14 the customer when it arrives." It appears to the court that in
15 these communications, defendant was tying up loose ends from the
16 end of his employment with Hat World.

17 Reviewing the evidence submitted by both parties, the court
18 concludes that plaintiff has not shown a strong likelihood of
19 success on the merits because it has not provided any evidence that
20 defendant misappropriated detailed customer information that
21 qualifies as "trade secret," while defendant has provided evidence
22 in the form of a declaration that he did not obtain any such
23 information.

24 In their motion for a preliminary injunction, plaintiffs focus
25 solely on the customer lists but have not provided the court with
26 an example of the lists, which it claims are "trade secrets."

1 Plaintiffs do not cite other trade secrets that defendant is
2 alleged to have misappropriated in violation of CUTSA. Similarly,
3 in their discussion of defendant's alleged breach of the
4 confidentiality agreement, plaintiffs refer only to customer lists.
5 Accordingly, the court finds that plaintiffs have not shown a
6 likelihood of success on the merits of the breach of contract
7 claim.

**ii. Irreparable Harm**

9 Plaintiffs argue that they will suffer irreparable harm in the
10 absence of an injunction because defendant's conduct is damaging
11 plaintiff's "goodwill" in the eyes of its customers. It is true
12 that harm to good will may be considered irreparable.
13 <u>Rent-A-Center, Inc. v. Canyon Television & Appliance Rental</u>, Inc.,
14 944 F.2d 597 (9th Cir. 1991). Plaintiff asserts in its motion that
15 many customers have ceased doing business with Hat World since
16 Kelly's departure, but provides no evidence that injunctive relief
17 will prevent that harm. By contrast, defendant has submitted
18 declarations by himself and other former employees and customers of
19 Hat World which indicate that customers left Hat World due to
20 dissatisfaction with products and service. See, e.g., Decl. Don
21 Borges ("there was a problem with virtually every order.").

22 Accordingly, plaintiff has not shown the court that
23 defendant's conduct is causing any irreparable harm that would be
24 prevented by a preliminary injunction.

25 Considering the evidence and arguments currently before it,
26 the court concludes that a preliminary injunction is not warranted

because plaintiff has not shown irreparable harm, and has not shown a likelihood of success on the merits. As an injunction may not issue without a showing of irreparable harm, the court need not proceed to the final two factors.

### IV. Conclusion

For the foregoing reasons, the court ORDERS as follows:

[1] Defendant's motion to dismiss, ECF No. 35, is GRANTED in part and DENIED in part.

[2] Plaintiff is GRANTED twenty-one (21) days to file an amended complaint consistent with this opinion.

[3] Plaintiff's motion for a preliminary injunction, ECF No. 7, is DENIED.

IT IS SO ORDERED.

DATED: August 10, 2012.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT