1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   HAT WORLD, INC., d/b/a
     LIDS TEAM SPORTS,
11                                         NO. CIV. S-12-01591 LKK/EFB
              Plaintiff,
12
          v.
13
     KEVIN KELLY,
14
              Defendant.
15   _____/

16        Plaintiff Hat World, Inc., alleges seven causes of action

17   against defendant, who is a former Hat World employee. The

18   complaint alleges generally that the defendant misappropriated

19   property and confidential information when he left his employment

20   with Hat World.  The information claimed included customer lists,

21   purchase orders, invoices, and spreadsheets. Pending before the

22   court is a motion by defendants to dismiss all but one of

23   plaintiff's claims for relief, and a motion by plaintiff for a

24   preliminary injunction. For the reasons discussed herein, the

25   Motion to Dismiss is GRANTED in part and DENIED in part. The Motion

26   for a Preliminary Injunction is DENIED.

                                     1

# I. Background

The following factual allegations are taken from the complaint. For the purpose of the pending motions only, they are taken as true.

Plaintiff Hat World, through its subsidiary Lids, sells customized sports uniforms, apparel, footwear, and equipment to institutional sports teams. The company also offers custom screen printing and embroidery. The company owns a license with Nike that allows it to sell products with the Nike "swoosh" logo. Lids operates in all fifty of the United States. Defendant Kelly began working for Hat World in April 2010. Kelly signed a Confidentiality Agreement, which provides in part:

> Employee [Kelly] acknowledges that during his/her employment, s/he may have access to and acquire knowledge of trade secrets and/or confidential information of the Employer [Hat World], including, but not necessarily limited to, business plans, financial information, marketing plans, client or customer information, client or customer lists, vendor information, and contracts, that have economic value and/or give the Employer a competitive advantage in the marketplace. Employee agrees not to use, reproduce, disclose, or make available the Employer's trade secrets or confidential information for his/her own benefit or the benefit of any person or entity other than the Employer without express permission or proper authorization from the Employer.

Ex. A to Compl. ECF 1-2.

Defendant worked as a sales representative for Hat World until February 2012. Kelly worked on 110 accounts throughout Northern California. As part of his job, Kelly cultivated customer goodwill, and maintained information about the company's purchasers. In addition, Kelly had access to confidential and proprietary business

1  information, including customer lists, customer preferences, price

2  lists, costs, revenue data, and pricing and discount structure.

3       During his last week of employment with Hat World, defendant

4  transferred files from his work computer to his personal email

5  account. Also during the tail-end of his employment with Hat World,

6  Kelly failed to final or process purchases from customers.

7  Plaintiffs allege on information and belief that Kelly had already

8  been hired by Eastbay while he was working for Hat World, and that

9  he was attempting to set up orders for Eastbay with Hat World

10 customers.

11      Hat World became aware of defendant's employment with Eastbay

12 in March 2012. Hat World alleges that defendant has targeted Hat

13 World customers identified in the confidential files that Kelly

14 emailed to himself while working for Hat World. Upon his

15 resignation, Kelly failed to return a laptop computer, personal

16 digital assistant, product samples, and product catalogs belonging

17 to Hat World. Kelly has now returned the laptop, but not the

18 remaining items.

19      The complaint alleges that while working for Eastbay, Kelly

20 has used proprietary Hat World order forms to send price quotes to

21 customers, that Kelly has fulfilled orders on behalf of Eastbay

22 when those orders were placed with Kelly while he was employed by

23 Hatworld.

24      The complaint also alleges that Kelly has been soliciting

25 other Hat World sales representatives to work for Eastbay, and is

26 using his knowledge about Hat World's cost structure in order to

1  underbid for Hat World accounts and place Hat World at a
2  competitive disadvantage.

3      After recovering the laptop computer from Kelly, Hat World
4  learned that Kelly had continued to access confidential information
5  and his Hat World email account after his resignation from Hat
6  World.

7      Based on the foregoing allegations, plaintiff's complaint
8  asserts seven causes of action: (1) Misappropriation of Trade
9  Secrets in violation of the California Uniform Trade Secrets Act
10  ("CUTSA"); (2) Unfair Competition in Violation of California
11  Business and Professions Code Sections 17200 et. seq.; (3)
12  Conversion; (4) Intentional Interference with Contractual
13  Relations; (5) Intentional Interference with Prospective Economic
14  Relations; (6) Breach of Confidentiality Agreement; and (7)
15  Violation of the Computer Fraud and Abuse Act.

16      Now pending before the court are plaintiff's motion for a
17  preliminary injunction, and defendant's motion to dismiss.

18                          **II. Standards**
19  **A. Standard for a Motion to Dismiss**

20      A dismissal motion under Fed. R. Civ. P. 12(b)(6) challenges
21  a complaint's compliance with the federal pleading requirements.
22  Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and
23  plain statement of the claim showing that the pleader is entitled
24  to relief."  The complaint must give the defendant "'fair notice of
25  what the ... claim is and the grounds upon which it rests.'"  <u>Bell</u>
26  <u>Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007), <u>quoting</u> <u>Conley v.</u>

1  Gibson, 355 U.S. 41, 47 (1957).

2      To meet this requirement, the complaint must be supported by

3  factual allegations.   Ashcroft v. Iqbal, 556 U.S. 662 (2009).

4  Moreover, this court "must accept as true all of the factual

5  allegations contained in the complaint."   Erickson v. Pardus, 551

6  U.S. 89, 94 (2007).[1]

7      "While legal conclusions can provide the framework of a

8  complaint," neither legal conclusions nor conclusory statements are

9  themselves sufficient, and such statements are not entitled to a

10  presumption of truth.   Iqbal, 556 U.S. at ___, 129 S. Ct. at

11  1949-50.   Iqbal and Twombly therefore prescribe a two step process

12  for evaluation of motions to dismiss.   The court first identifies

13  the non-conclusory factual allegations, and then determines whether

14  these allegations, taken as true and construed in the light most

15  favorable to the plaintiff, "plausibly give rise to an entitlement

16  to relief."   Iqbal, 556 U.S. at ___, 129 S. Ct. at 1949-50.

17      "Plausibility," as it is used in Twombly and Iqbal, does not

18  refer to the likelihood that a pleader will succeed in proving the

19  allegations.   Instead, it refers to whether the non-conclusory

20  factual allegations, when assumed to be true, "allow[ ] the court

21  to draw the reasonable inference that the defendant is liable for

22  _____

23      [1] Citing Twombly, 556 U.S. at 555-56, Neitzke v. Williams, 490
   U.S. 319, 327 (1989) ("[w]hat Rule 12(b)(6) does not countenance
24  are dismissals based on a judge's disbelief of a complaint's
   factual allegations"), and Scheuer v. Rhodes, 416 U.S. 232, 236
25  (1974) ("it may appear on the face of the pleadings that a recovery
   is very remote and unlikely but that is not the test" under
26  Rule 12(b)(6)).

1   the misconduct alleged."   Iqbal, 556 U.S. at ___, 129 S. Ct. at

2   1949.   "The plausibility standard is not akin to a 'probability

3   requirement,' but it asks for more than a sheer possibility that a

4   defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at

5   557).[2]  A complaint may fail to show a right to relief either by

6   lacking a cognizable legal theory or by lacking sufficient facts

7   alleged under a cognizable legal theory. Balistreri v. Pacifica

8   Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

9   **B. Standard for a Motion for a Preliminary Injunction**

10   Fed. R. Civ. P. 65 provides authority to issue either

11   preliminary injunctions or temporary restraining orders. A

12   preliminary injunction is an "extraordinary remedy." Winter v.

13   Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008)

14   (internal citation omitted). When a court considers whether to

15   grant a motion for a preliminary injunction, it balances "the

16

17       [2] Twombly imposed an apparently new "plausibility" gloss on
    the previously well-known Rule 8(a) standard, and retired the

18   long-established "no set of facts" standard of Conley v. Gibson,
    355 U.S. 41 (1957), although it did not overrule that case

19   outright. See Moss v. U.S. Secret Service, 572 F.3d 962, 968 (9th
    Cir. 2009) (the Twombly Court "cautioned that it was not outright

20   overruling Conley ...," although it was retiring the "no set of
    facts" language from Conley).  The Ninth Circuit has acknowledged

21   the difficulty of applying the resulting standard, given the
    "perplexing" mix of standards the Supreme Court has applied in

22   recent cases. See Starr v. Baca, 652 F.3d 1202, 1215 (9th
    Cir. 2011) (comparing the Court's application of the "original,

23   more lenient version of Rule 8(a)" in Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002) and Erickson v. Pardus, 551 U.S. 89 (2007) (per

24   curiam), with the seemingly "higher pleading standard" in Dura
    Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), Twombly and

25   Iqbal), rehearing en banc denied, ___ F.3d ___, 2011 WL 4582500
    (October 5, 2011).  See also Cook v. Brewer, 637 F.3d 1002, 1004

26   (9th Cir. 2011) (applying the "no set of facts" standard to a
    Section 1983 case).

1  competing claims of injury, . . . the effect on each party of the

2  granting or withholding of the requested relief, . . . the public

3  consequences in employing the extraordinary remedy of injunction,"

4  and plaintiff's likelihood of success. Id. at 20, 24 (quoting Amoco

5  Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987); Weinberger v.

6  Romero-Barcelo, 456 U.S. 305, 312 (1982). In order to succeed on a

7  motion for a preliminary injunction, the plaintiff must establish

8  that "he is likely to succeed on the merits, that he is likely to

9  suffer irreparable harm in the absence of preliminary relief, that

10 the balance of equities tips in his favor, and that an injunction

11 is in the public interest." Winter, 555 U.S. at 20.

12      After Winter, the Ninth Circuit modified its "sliding scale"

13 approach which balanced the elements of the preliminary injunction

14 test. "The 'serious questions' approach survives Winter when

15 applied as part of the four-element Winter test. In other words,

16 'serious questions going to the merits' [rather than a likeliness

17 of success on the merits] and a hardship balance that tips sharply

18 toward the plaintiff can support issuance of an injunction,

19 assuming the other two elements of the Winter test are also met."

20 Alliance For The Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th

21 Cir. 2011).

22                            **III. Analysis**

23 **A. Motion to Dismiss**

24      Defendant argues that portions of the first, and all of the

25 second through fifth claims for relief are preempted by the

26 California Uniform Trade Secrets Act, California Civil Code §3426

1  ("CUTSA"). Defendant also argues that the seventh claim should be

2  dismissed for failure to state a claim.

3  **i. CUTSA Preemption**

4       CUTSA generally provides remedies, including injunctive relief

5  and damages, for improper acquisition or use of trade secrets that

6  have been the subject of reasonable efforts to maintain secrecy.

7  Cal Civ Code § 3426. The statute has a "comprehensive structure and

8  breadth," and "occupies the field" with respect to common law trade

9  secret misappropriation claims. K.C. Multimedia, Inc. v. Bank of

10 America Technology & Operations, Inc., 171 Cal. App. 4th 939, 954

11 (Cal. App. 6th Dist. 2009). Thus, CUTSA provides the exclusive

12 civil remedy for trade secret misappropriation under California

13 law. Silvaco Data Sys. v. Intel Corp., 184 Cal. App. 4th 210, 236

14 (6th Dist. 2010). See also Cacique, Inc. v. Robert Reiser & Co.,

15 169 F.3d 619 (9th Cir. 1999) ("California courts have held that the

16 common law of trade secrets has been displaced where it conflicts

17 with California's version of the UTSA.").

18      This preemption applies to all common law claims that are

19 "based on the same nucleus of facts as the misappropriation of

20 trade secrets claim." K.C. Multimedia, Inc. 171 Cal App. 4th at

21 958. "In other words, preemption generally applies where there is

22 no material distinction between the wrongdoing underlying the CUTSA

23 claim and the non-CUTSA claim." Ikon Office Solutions, Inc. v.

24 Rezente, 2011 U.S. Dist. LEXIS 40053 (E.D. Cal. 2011).

25      The text of the statute identifies three categories of claims

26 that it does not preempt: contractual remedies, whether or not

8

1   based on misappropriation of trade secrets, other civil remedies
2   not based on trade secret misappropriation, and criminal remedies
3   whether or not based on misappropriation of a trade secret. Cal Civ
4   Code § 3426.7.
5        With respect to plaintiff's first claim the parties agree that
6   "reference to the common law claim for misappropriation of trade
7   secrets would be preempted by CUTSA." Pl.'s Opp'n 4, ECF No. 48.
8   Accordingly, the first claim for relief is DISMISSED with leave to
9   amend.
10       Defendant argues that claims two, three, four, and five "are
11  predicated entirely on the factual allegation that Mr. Kelly
12  misappropriated Hat World's trade secrets." Def.'s Mot 4, ECF No.
13  35. Plaintiff appears to concede that the claims are preempted
14  insofar as they are based on misappropriation of trade secrets, but
15  argues that there is a basis for each claim even setting aside
16  references to trade secrets. For example, the complaint's second
17  claim alleges that Kelly violated California's Unfair Competition
18  Law ("UCL") by "misappropriation of Hat World's trade secrets and
19  other confidential and proprietary information, unlawful
20  solicitation of Hat World customers and employees, and unlawful
21  conversion of purchase orders for Hat World products," Compl. ¶61.
22  Plaintiff's opposition argues that the claim is not preempted
23  because the alleged conduct "clearly constitutes an unlawful or
24  fraudulent business act or practice sufficient to state a claim
25  under the UCL and is not premised on the misappropriation of
26  Plaintiff's confidential information," Pl.'s Opp'n 5.

1    Similarly, the complaint's fourth claim alleges that defendant
2  interfered with Hat World's contractual relationships by "unlawful
3  use of Hat World's confidential information and misappropriation of
4  its trade secrets to solicit Hat World customers and sales
5  representatives." Compl. 14. In the opposition, plaintiff argues
6  that the claim should not be dismissed because it alleges tortious
7  interference by additional methods beyond misappropriation of trade
8  secrets.

9    Because plaintiff appears to concede that its claims are
10 preempted insofar as they are based on misappropriation of trade
11 secrets, but argues that the claims remain viable because of
12 conduct falling outside of CUTSA's scope, the court DISMISSES the
13 complaint, and GRANTS plaintiff leave to amend the complaint to
14 disentangle claims that are preempted by CUTSA from those that are
15 premised on a separate nucleus of facts.

16 **ii. Computer Fraud and Abuse**

17    Plaintiff's seventh claim alleges that defendant violated the
18 Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 when he
19 "knowingly and with the intent to defraud accessed without
20 authorization, and/or exceeded his authorization in accessing,
21 Plaintiff's computers, computer systems, and databases in an effort
22 to damage and/or misappropriate Hat World's confidential and
23 protected information." This claim arises from the allegation that
24 during his employment, defendant accessed Hat World's computers and
25 servers for purposes other than company business, and that he
26 accessed the computers and servers on February 15 and February 16,

1  after all authorization to access the computers "would have
2  terminated" following Kelly's resignation. Compl. ¶ 47. Defendant
3  argues that plaintiff has failed to state a claim because the
4  complaint does not allege that defendant accessed any information
5  that he was not authorized to access.

6      In the Ninth Circuit, "the plain language of the CFAA targets
7  the unauthorized procurement or alteration of information, not its
8  misuse or misappropriation. . . . the phrase 'exceeds authorized
9  access' in the CFAA does not extend to violations of use
10 restrictions." United States v. Nosal, 676 F.3d 854, 860 (9th Cir.
11 2012). In short, the CFAA is an "anti-hacking" statute and not a
12 misappropriation statute. Id.

13     Here, plaintiff's CFAA claim has two independent components:
14 one is that defendant accessed computers and servers for purposes
15 other than company business. Compl. ¶ 82. The second is that he
16 accessed those computers after he resigned. As to the first
17 component, the court agrees with defendant that the alleged conduct
18 does not violate the CFAA because defendant was authorized to
19 access the information. As to the second components, the court
20 concludes that plaintiff has stated a claim under the CFAA by
21 alleging facts from which the court can plausibly conclude that
22 defendant exceeded his authorized access by continuing to access
23 information stored on company computers and servers after his
24 resignation.

25     Accordingly, the motion to dismiss is GRANTED in part and
26 DENIED in part. Plaintiff's first claim for relief is DISMISSED

1  insofar as it refers to violations of the common law of
2  misappropriation of trade secrets. Plaintiff's second, third,
3  fourth, and fifth claims are DISMISSED with leave to amend.
4  Plaintiff's seventh claim for relief is DISMISSED with respect to
5  defendant's accessing of Hat World computers during his employment,
6  but it is not dismissed with respect to access to the computers
7  after his resignation.

8  **B. Motion for a Preliminary Injunction**

9        The court will consider plaintiff's motion for a preliminary
10 injunction insofar as it rests on the CUTSA and breach of
11 confidentiality agreement[3] claims, which this order does not
12 dismiss. Plaintiff's motion seeks a preliminary injunction to

13       prevent Defendant Kelly from directly or indirectly,
         individually or in concert with others: (a) using or
14       disclosing any of Hat World's confidential information and
         trade secrets; (b) using Hat World's confidential
15       information and trade secrets to solicit Hat World
         customers; (c) soliciting any Hat World customers identified
16       in materials previously misappropriated by Defendant (as
         described in more detail in documents filed herewith under
17       seal), until the earlier of the trial date or the one-year
         anniversary of the Court's order; (d) using Hat World's
18       confidential information and trade secrets to solicit Hat
         World employees; (e) using Eastbay products to fill, or
19       otherwise filling on behalf of Eastbay, any customer
         purchase orders previously placed with Hat World; and (f)
20       otherwise breaching the Confidentiality Agreement identified
         in Plaintiff's Complaint.
21
22 Mot. for Preliminary Injunction 20, ECF No. 7.

23 ////

24

25       [3] As noted, contract claims are not preempted by CUTSA, and
   defendant did not seek to dismiss claim six (breach of
26 confidentiality agreement).

1 **i. Likelihood of Success on the Merits**

2 **a. CUTSA Claim**

3    Plaintiff alleges that defendant misappropriated customer
4 lists containing customer preferences, pruchasing history, price
5 quotes, and product specifications, and that he has used this
6 information to benefit himself and Eastbay by targeting customers
7 based on their past purchasing history.

8    Under CUTSA, a "trade secret" is "information, including a
9 formula, pattern, compilation, program, device, method, technique,
10 or process, that: (1) Derives independent economic value, actual or
11 potential, from not being generally known to the public or to other
12 persons who can obtain economic value from its disclosure or use;
13 and (2) Is the subject of efforts that are reasonable under the
14 circumstances to maintain its secrecy." Cal Civ Code § 3426.1(d).

15    Customer lists may be considered trade secrets "where the
16 employer has expended time and effort identifying customers with
17 particular needs or characteristics." <u>Morlife, Inc. v. Perry</u>, 56
18 Cal. App. 4th 1514, 1521 (Cal. App. 1st Dist. 1997). The customer
19 list must have economic value in order to qualify as a trade
20 secret. This means that the secrecy of the list provides a business
21 with a substantial advantage. <u>Id.</u> The ability of a former employee
22 to "solicit both more selectively and more effectively" is a
23 substantial advantage. <u>Id.</u>

24    Plaintiff here has submitted a declaration by a Hat World
25 executive that explains that the customer lists contain detailed
26 information that is "integral to the successful operation and

1  growth of Hat World's business." Moldander Decl. ¶ 8, ECF No. 8.
2  Further, the declaration states that the customer information is
3  not readily available to the public, and describes the efforts put
4  in place by Hat World to preserve the secrecy of the customer
5  lists. The employee handbook prohibits disclosure of this
6  confidential information, employees are required to execute
7  confidentiality agreements, and employees are regularly instructed
8  that the information is confidential. Further, access to the
9  information on company computers is restricted to employees with
10 passwords. Molander Decl.

11      Defendant counters that much of the information on the
12 customer lists, such as the identity of the customers and the
13 individuals in charge of purchasing, is readily available to the
14 public, as most of the customers are local high school athletic
15 teams. Defendant also argues that defendant has produced no
16 evidence that defendant forwarded to himself the portions of the
17 customer lists that could be deemed "trade secrets." Defendant
18 states in a declaration that he did not forward to himself "any
19 compilation of information created by Lids regarding Lids
20 customers. Lids never provided me with any detailed report
21 reflecting each customer's history of purchases or summary
22 information about any particular habits, general needs, or
23 preferences." Kelly Decl. ¶ 22. Plaintiff has not submitted to the
24 court an example of a customer list that it claims constitutes
25 "trade secrets."

26      Although Hat World's preliminary injunction motion focuses

14

1  entirely on customer lists, defendant has provided copies of emails
2  and other documents that appear to indicate that activity directed
3  from his private email account in the last weeks of his employment
4  and during the days after his resignation was not for the benefit
5  of himself or Eastbay. For example, in an email chain spanning from
6  February 20, 2012 to February 24, defendant communicated with
7  Lids/Hat World employee Thomas Moore from his personal email
8  account. In the email exchange, defendant appears to be assisting
9  Mr. Moore in completing an order placed with Lids by one of
10 defendant's former clients. Ex. 4 to Kelly Decl. Likewise, on
11 February 16, 2012, after defendant's resignation, he sent an email
12 to Hat World/Lids employee Taylor Gorman directing Mr. Gorman to
13 "make sure that this late Hypercool Jersey is shipping overnight to
14 the customer when it arrives." It appears to the court that in
15 these communications, defendant was tying up loose ends from the
16 end of his employment with Hat World.

17     Reviewing the evidence submitted by both parties, the court
18 concludes that plaintiff has not shown a strong likelihood of
19 success on the merits because it has not provided any evidence that
20 defendant misappropriated detailed customer information that
21 qualifies as "trade secret," while defendant has provided evidence
22 in the form of a declaration that he did not obtain any such
23 information.

24     In their motion for a preliminary injunction, plaintiffs focus
25 solely on the customer lists but have not provided the court with
26 an example of the lists, which it claims are "trade secrets."

1  Plaintiffs do not cite other trade secrets that defendant is
2  alleged to have misappropriated in violation of CUTSA. Similarly,
3  in their discussion of defendant's alleged breach of the
4  confidentiality agreement, plaintiffs refer only to customer lists.
5  Accordingly, the court finds that plaintiffs have not shown a
6  likelihood of success on the merits of the breach of contract
7  claim.

8  **ii. Irreparable Harm**

9      Plaintiffs argue that they will suffer irreparable harm in the
10 absence of an injunction because defendant's conduct is damaging
11 plaintiff's "goodwill" in the eyes of its customers. It is true
12 that harm to good will may be considered irreparable.

13 <u>Rent-A-Center, Inc. v. Canyon Television & Appliance Rental</u>, Inc.,
14 944 F.2d 597 (9th Cir. 1991). Plaintiff asserts in its motion that
15 many customers have ceased doing business with Hat World since
16 Kelly's departure, but provides no evidence that injunctive relief
17 will prevent that harm. By contrast, defendant has submitted
18 declarations by himself and other former employees and customers of
19 Hat World which indicate that customers left Hat World due to
20 dissatisfaction with products and service. See, e.g., Decl. Don
21 Borges ("there was a problem with virtually every order.").

22     Accordingly, plaintiff has not shown the court that
23 defendant's conduct is causing any irreparable harm that would be
24 prevented by a preliminary injunction.

25     Considering the evidence and arguments currently before it,
26 the court concludes that a preliminary injunction is not warranted

1 because plaintiff has not shown irreparable harm, and has not shown

2 a likelihood of success on the merits. As an injunction may not

3 issue without a showing of irreparable harm, the court need not

4 proceed to the final two factors.

5                              **IV. Conclusion**

6      For the foregoing reasons, the court ORDERS as follows:

7      [1]  Defendant's motion to dismiss, ECF No. 35, is GRANTED

8           in part and DENIED in part.

9      [2]  Plaintiff is GRANTED twenty-one (21) days to file an

10          amended complaint consistent with this opinion.

11     [3]  Plaintiff's motion for a preliminary injunction, ECF

12          No. 7, is DENIED.

13     IT IS SO ORDERED.

14     DATED:  August 10, 2012.

15

16

17                         LAWRENCE K. KARLTON

18                         SENIOR JUDGE
                           UNITED STATES DISTRICT COURT

19

20

21

22

23

24

25

26

                                   17